UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SUSAN MARIE SCHRADER,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 5:16-CV-05110-KES<br><br><br>REPORT & RECOMMENDATION |

## INTRODUCTION

Movant, Susan Marie Schrader, has filed a *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1.[1] Now pending is a motion to dismiss by respondent the United States of America ("government"). See Docket No. 17. Ms. Schrader filed a response to the motion. Docket No. 28. This matter has been referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge. The following is this court's recommended disposition of the government's motion.

---

[1] Within this opinion the court cites to documents in Ms. Schrader's civil habeas case as well as documents in her underlying criminal case. Documents filed in her § 2255 civil case will be cited by the court's docket number for that document. Documents filed in her criminal case will be cited "CR Docket No."

## FACTS

**A.     Pretrial Proceedings**

Ms. Schrader was charged in count one of a multi-count indictment with conspiracy to distribute cocaine.  See United States v. Schrader, et al., CR No. 14-50049, Doc. 2 (D.S.D.).  Four codefendants were also charged in count one of the indictment, as well as in various other drug-related counts contained in the indictment.  Id.  Other alleged coconspirators were charged in different criminal files in the court's docket.

Ms. Schrader made her initial appearance on May 30, 2014, at which time counsel was appointed to represent her and she was released.  See CR Docket Nos. 17, 21 & 29.  A few days later, Ms. Schrader's original lawyer discovered a conflict of interest in representing her and moved to withdraw. See Docket No. 27.  That motion was granted and Ms. Lorie D. Melone was appointed to represent Ms. Schrader.  See Docket No. 30.  Ms. Melone represented Ms. Schrader throughout the proceedings before the district court and on appeal to the Eighth Circuit.

 Various pretrial motions were filed on her behalf, including a motion for bill of particulars or, in the alternative, to dismiss; a motion to suppress; and numerous motions *in limine*.  Further, at the request of defense counsel, a private investigator and paralegal were appointed to assist defense counsel.  CR Docket Nos. 61 & 86.

In her motion to suppress, counsel for Ms. Schrader argued that the arrest and seizure of Ms. Schrader at her home was unreasonable under the Fourth Amendment.  See CR Docket No. 42.  Counsel described agents

bursting into Ms. Schrader's house, having kicked in the front door.  Id.
Counsel described ten law enforcement vehicles and numerous police officers
descending on her home, getting Ms. Schrader out of bed partially clothed, and
handcuffing her to a table.  Id.  Counsel described the presence of numerous
minor children, including children of tender age.  Id.  Counsel asserted a police
officer ordered a ten-year old child at gun point to come upstairs backwards,
get on her knees, and then handcuffed the child.  Id.  Counsel asserted there
was no search warrant.  Id.  Counsel argued that warrantless entry into a
home for the purpose of making an arrest was in violation of the Fourth
Amendment.  Id.

In response to counsel's motion, the government responded that no
evidence was seized from Ms. Schrader's home and she made no statements to
police on the occasion of her arrest.  See CR Docket Nos. 45 & 46.  Accordingly,
the government asserted there was no evidence as a result of the allegedly
unconstitutional behavior by police to be suppressed.  Id.  The magistrate
judge[2] recommended that Ms. Schrader's motion to suppress be denied as
moot because there was no evidence to suppress.  See CR Docket No. 49.  The
district court adopted this recommendation and also denied Ms. Schrader's
motion to suppress.  See CR Docket No. 66.

In her motion to dismiss, counsel for Ms. Schrader argued that the
indictment was impermissibly vague because it did not specify a time period for
the conspiracy or the quantity of drugs involved.  See CR Docket No. 40.
Counsel also argued the events described in the indictment fell outside the

---

[2] Not the undersigned magistrate judge.

statute of limitations.  Id.  The district court denied this motion because the indictment tracked the statutory language and because the end date of the conspiracy fell within the statute of limitations.  See CR Docket No. 66.

In her motion for a bill of particulars, counsel for Ms. Schrader argued that a bill of particulars as to dates of the conspiracy and drug quantities attributable to the conspiracy was necessary to allow her to prepare her defense.  See CR Docket No. 40.  The district court denied the request for a bill of particulars on both counts, holding that the indictment, plus the government's discovery index and affidavit, sufficiently advised Ms. Schrader of the evidence against her so as to allow her to formulate her defense.  See CR Docket No. 66.

**B.    Jury Trial**

A jury trial was held December 16-18, 2014.  CR Docket No. 155.  At the trial, the following persons testified for the government:  Gabriel White Plume, Kateri Patton, Thomas Patrick Brewer, Twila LeBeau, Irene Tuttle, Holly Wilson, Everett Catches, and Special Agent Dan Cooper of the Federal Bureau of Investigation ("FBI").  See CR Docket No. 235 at p. 2.  Kateri Patton is Ms. Schrader's daughter.  Id. at p. 69.

Kateri testified that she was a co-conspirator with her mom in the same cocaine distribution conspiracy for which Ms. Schrader was being tried.  Id. at pp. 69-70.  Kateri testified she often obtained cocaine at her mom's house or learned there who had cocaine available to purchase.  Id. at pp. 70-71.  Kateri testified her mom, her sisters, or friends would tell Kateri from whom she would be able to purchase cocaine.  Id. at p. 71.  Kateri testified the head of the

conspiracy was Gerald "Gers" LeBeau and that Kateri took over distributing drugs for Gers when Gers went to jail. Id. at pp. 71-72. After Gers got out of jail, Kateri testified that he would use Ms. Schrader's home to distribute cocaine from. Id. at pp. 72-73.

Gabriel White Plume testified he first met Ms. Schrader when he was incarcerated in the Pine Ridge jail on the Pine Ridge Indian Reservation. Id. at p. 54. Ms. Schrader was Mr. White Plume's lay tribal advocate in court and succeeded in obtaining Mr. White Plume's release from jail. Id. Mr. White Plume testified he paid for Ms. Schrader's services with cocaine, which Ms. Schrader accepted. Id. at pp. 54-55. Mr. White Plume hired Ms. Schrader two or three times and paid for her services each time with cocaine. Id. at p. 55.

Ms. Schrader sometimes asked Mr. White Plume where she could obtain cocaine. Id. Sometimes Ms. Schrader would tell Mr. White Plume where he could obtain cocaine. Id. Sometimes Mr. White Plume would deliver cocaine for Ms. Schrader at her request. Id. At one time Mr. White Plume purchased an 8-ball of cocaine from Ms. Schrader at her house. Id. at pp. 55-56. Other times Mr. White Plume purchased smaller quantities of cocaine from Ms. Schrader at her house. Id. A couple of times Mr. White Plume used cocaine with Ms. Schrader in the basement of her house. Id. at p. 57.

Mr. White Plume testified Ms. Schrader allowed Angelo Respects Nothing to sell cocaine from her house. Id. at pp. 57-58. Mr. White Plume testified Ms. Schrader would sometimes obtain cocaine from Gers, sometimes from

Misty Bradford.  Id. at pp. 58-60.  Mr. White Plume distributed cocaine at Ms. Schrader's direction to buyers identified by her.  Id. at pp. 60-61.

Thomas Patrick Brewer testified he was Ms. Schrader's neighbor and had grown up with her.  Id. at pp. 74-75.  Ms. Schrader had represented Mr. Brewer in a guardianship case in tribal court.  Id. at pp. 89-90.

Mr. Brewer testified he was a user of cocaine and would purchase it from Gers in the basement of Ms. Schrader's house.  Id. at p. 82.  Mr. Brewer would ask Ms. Schrader if he could purchase cocaine and either Ms. Schrader would go to the basement and retrieve some cocaine from Gers for Mr. Brewer, or she would send Mr. Brewer down to the basement to get it for himself directly from Gers.  Id. at p. 83.

Eventually Mr. Brewer began selling cocaine for Gers.  Id. at p. 84.  Mr. Brewer sold the drug from either his house or Ms. Schrader's house.  Id.  Mr. Brewer also bought cocaine from Angelo at Ms. Schrader's house.  Id. at pp. 85-86.  When Mr. Brewer was selling from Ms. Schrader's house, sometimes she would act as the go-between between Mr. Brewer and the buyer.  Id. at pp. 86-87.  Mr. Brewer testified he saw Gabriel White Plume and Holly Wilson purchase cocaine at Ms. Schrader's house.  Id. at pp. 87-88.

Twila LeBeau, Gers' sister, testified she used cocaine between 2006 and 2008 and had purchased the drug from Ms. Schrader at her house on some occasions.  Id. at p. 99, 101.  There were some times that Ms. LeBeau used the newly-purchased cocaine in a bedroom at Ms. Schrader's house with Ms. Schrader's daughters.  Id. at p. 100.  After Gers was released from prison in 2010, Ms. LeBeau would sometimes use cocaine with Gers and Ms. Schrader

at Ms. Schrader's house.  <u>Id.</u> at pp. 101-02.  Ms. LeBeau testified that both she and Ms. Schrader sold cocaine for Gers.  <u>Id.</u> at pp. 102-03.  There were times Gers would ask Ms. LeBeau to collect drug money from Ms. Schrader on Gers' behalf.  <u>Id.</u> at pp. 104-05.

Ms. LeBeau testified she had purchased cocaine from Angelo at Ms. Schrader's house.  <u>Id.</u> at p. 107.  Because Ms. LeBeau did not know Angelo, Ms. Schrader would take Ms. LeBeau's money, give it to Angelo, and bring Ms. LeBeau's drugs back to her—a service known as "middling."  <u>Id.</u>

Irene Tuttle testified she used cocaine from 2006 to 2008.  <u>Id.</u> at p. 116. She would call up Ms. Schrader and ask if she had any cocaine; if Ms. Schrader had cocaine, she would sell it to Irene.  <u>Id.</u> at pp. 116-17. Ms. Tuttle would receive the cocaine in an envelope from Ms. Schrader at Ms. Schrader's house.  <u>Id.</u> at pp. 117-18.  Ms. Tuttle would also purchase cocaine from Twila LeBeau and Pat Brewer.  <u>Id.</u> at p. 119.

Holly Wilson testified she had been a lay advocate in tribal court on both the Rosebud and Pine Ridge Indian Reservations for 23 years.  <u>Id.</u> at pp. 126-27.  She lost her job when she was also indicted for conspiracy to distribute cocaine.  <u>Id.</u> at p. 128.  Ms. Wilson testified she grew up with Ms. Schrader, their parents were friends, and they were colleagues as lay tribal advocates together.  <u>Id.</u> at p. 131.  Ms. Wilson testified she sometimes received cocaine in payment for her advocacy.  <u>Id.</u> at pp. 131-32.  Ms. Wilson testified Ms. Schrader sometimes received payment in cocaine also.  <u>Id.</u> at p. 132. Ms. Wilson bought cocaine "a lot of times" at Ms. Schrader's house.  <u>Id.</u> at p. 133.

Gers would call Ms. Wilson and notify her he was selling cocaine at Ms. Schrader's and Ms. Wilson could come to Ms. Schrader's house to buy the drug. Id. at p. 134. Sometimes Ms. Schrader would call Ms. Wilson to notify her that cocaine was available for purchase at Ms. Schrader's house. Id. Sometimes Ms. Wilson would give Ms. Schrader the money, Ms. Schrader would take the money to Gers, Angelo, Pat Brewer or whoever was selling, and then Ms. Schrader would return with the cocaine and hand it to Ms. Wilson. Id. at pp. 134-36, 138. Ms. Wilson testified that Neil LeBeau, Gers' son, also sold cocaine to Ms. Wilson from Ms. Schrader's house. Id. at p. 137. Ms. Schrader complained to Ms. Wilson that Gers and Twila were not compensating her enough for the use of her house. Id. at pp. 135-36.

Everett Catches testified he worked as a confidential informant for the government after getting arrested on state drug charges. Id. at pp. 145-47. As part of his work, he made controlled buys of drugs on the Pine Ridge Indian Reservation. Id. at pp. 146-47. Two controlled buys were made through Holly Wilson, who obtained the drugs from Ms. Schrader's house while Mr. Catches waited in the motor vehicle. Id. at pp. 148-49. Another time Mr. Catches and his friend obtained cocaine at Ms. Schrader's house when they were there attending a party. Id. at pp. 149-50. He gave Ms. Schrader $50, she took the money into a back room and returned with cocaine, which she gave to Mr. Catches and his friend. Id.

Agent Cooper testified, but did not testify about any evidence seized from Ms. Schrader's home. Id. at pp. 152-62. Nor did Agent Cooper testify to any statements made by Ms. Schrader. Id.

Charles Richards testified he bought cocaine at Ms. Schrader's house from Gers, Pablo LeBeau, and Angelo. Id. at Docket No. 235-1 at pp. 12-13. He also testified that he delivered cocaine to Ms. Schrader at the tribal courthouse. Id. at pp. 14-15. He testified specifically to being at Ms. Schrader's house drinking one time when he and some others all pooled their money to buy a gram of cocaine there. Id. at p. 16.

Kelsey Twiss testified he had known Ms. Schrader most of his life. Id. at pp. 23-24. Mr. Twiss testified he had purchased cocaine from Ms. Schrader and from others who were selling out of her house. Id. at p. 25. Mr. Twiss stated that Ms. Schrader represented him on a matter in tribal court; when they were done, Ms. Schrader told him he could obtain cocaine at her house after 4:30 p.m. that day. Id. at pp. 25-26. He testified one of the people he purchased cocaine from at Ms. Schrader's house was Neil LeBeau. Id. at p. 27.

Tonya Lynn Provost testified she was a user of cocaine and had sold it in 2005. Id. at pp. 32-35. After she quit selling it, she would contact Ms. Schrader to find out where she could purchase cocaine. Id. at p. 34. Ms. Provost testified she would sometimes use cocaine with Susan at either Ms. Provost's house or Ms. Schrader's house. Id. at p. 36. Ms. Provost testified that Whitney Zephier, Ms. Schrader's daughter, would also tell Ms. Provost where to obtain cocaine. Id. at pp. 38-39. Sometimes Ms. Provost would obtain cocaine from Whitney at Ms. Schrader's house. Id. She also bought cocaine from Pat Brewer at Ms. Schrader's house. Id. at p. 40. Ms. Provost also testified that at times she would give Ms. Schrader money for cocaine and Ms. Schrader would buy it for her and bring it to her. Id. at pp. 41-42.

9

At the close of the government's evidence, counsel for Ms. Schrader made a motion for judgment of acquittal. See Docket No. 235-1 at p. 44. Counsel argued that the government had failed to introduce sufficient evidence to prove beyond a reasonable doubt that Ms. Schrader had voluntarily and intentionally joined the conspiracy and that at the time of joining she understood the purpose of the agreement or understanding. Id. The court denied the motion. Id. at pp. 210-11.

Tribal Court Judge Patrick Lee was the first witness called by counsel for Ms. Schrader. Id. at p. 46. Judge Lee testified Ms. Schrader regularly appeared before him in court as a lay tribal advocate. Id. at pp. 46-49. Judge Lee testified Ms. Schrader's performance was always good, he never received any complaints about her, and he never observed her to be intoxicated in court. Id.

Stan Zakinski also testified for Ms. Schrader. Id. at p. 52. Mr. Zakinski was a former chief of police for the Rapid City Police Department, a graduate of the FBI Academy, the Secret Service Dignitary Protection, the University of Minnesota Juvenile Officers Institute, and drug enforcement school. Id. He was hired as a private investigator for Ms. Schrader. Id. Mr. Zakinski provided foundation for the introduction of a number of photographs and drawings of Ms. Schrader's house. Id. at pp. 52-59.

Marilyn White testified for Ms. Schrader. Id. at p. 60. Ms. White testified she was a long-time friend of Ms. Schrader's. Id. at p. 61. Ms. White testified that Ms. Schrader cares for a large extended family who are in and out of Ms. Schrader's house from time to time. Id. at pp. 61-62. Ms. White had been

in Ms. Schrader's home numerous times and never saw drugs being used there.  Id. at p. 62.  She also testified she never saw Ms. Schrader use drugs. Id. at p. 63.

Charles McGaa, a pastoral minister for 22 years, testified for Ms. Schrader.  Id. at pp. 63-64.  He testified he had known Ms. Schrader since the early 1980s and has never known her to be under the influence of drugs in his presence.  Id. at pp. 64-65.

Lucine "Poxie" Schaffer testified that she had lived in Ms. Schrader's house for the last 2-3 years.  Id. at p. 66.  Ms. Schaffer testified that there are lots of people that constantly go in and out of Ms. Schrader's house.  Id. at p. 68.  Ms. Schaffer testified Ms. Schrader always had a lot of food and people would come in to get food to eat.  Id.  She also testified Ms. Schrader is in her office most of the time.  Id.  On cross-examination it was established that Ms. Schaffer is hard of hearing and if the phone rings in the night, she always has someone else answer it because she cannot hear people talking over the phone.  Id. at p. 71.

Donna Lamont testified for the defense.  Id. at p. 72.  Ms. Lamont testified she works for the tribal housing association which hired Ms. Schrader to perform the legal work for evictions on behalf of the housing association.  Id. at pp. 73-74.  Ms. Lamont testified in the course of one year she had probably visited Ms. Schrader's house 100 times.  Id. at p. 74.  She observed lots of people there coming and going, including children and elderly people.  Id. at pp. 74-75.  Records for the housing association showed 12 people were registered to be living at Ms. Schrader's house.  Id. at p. 77.  During all the

times Ms. Lamont had contact with Ms. Schrader, she never knew her to be under the influence of drugs. Id. at p. 78.

Diane Zephier, a lawyer and retired administrative law judge, testified for the defense as the last witness at trial. Id. at p. 80. Ms. Zephier testified she had known Ms. Schrader since 1980, when Ms. Zephier was in law school. Id. at p. 81. Ms. Zephier testified Ms. Schrader went to college and maintained a 3.8 grade point average and was on the honor society there. Id. at p. 82. She stated Ms. Schrader had appeared before her when Ms. Zephier was a judge 50 to 75 times. Id. Ms. Zephier had been invited to Ms. Schrader's house on numerous occasions for dinners and birthday parties. Id. at pp. 82-83. Ms. Zephier testified Ms. Schrader provided food and a place to stay for people that did not have a place of their own, so there were always a lot of people in and out of the house. Id. at p. 83.

Ms. Schrader was found guilty of Count I in the indictment, the conspiracy to distribute cocaine count. CR Docket No. 153.

**C.    Sentencing**

In anticipation of the sentencing hearing, a presentence report (PSR) was prepared for the court's review. CR. Docket No. 189. That document indicated Ms. Schrader's highest level of education is a Master's Degree. Id. at p. 1. The PSR calculated her advisory United States Sentencing Guideline ("USSG") sentencing range as follows:

| | |
|---|---|
| Base Offense Level based on 400-500 grams of cocaine | 22 |
| Adjustment for Maintaining a Premises for Distributing Drugs | +2 |
| Adj. for Distribution to a Person Under 18 Years of Age | +2 |

Adj. for Manager or Supervisor, But Not Organizer or Leader     +3

TOTAL OFFENSE LEVEL:     29

Zero Criminal History Points =     Criminal History Category I

USSG Advisory Sentencing Range:     87–108 months' incarceration

The statutory maximum was 20 years' imprisonment with no mandatory minimum sentence. Counsel for Ms. Schrader lodged 26 objections to the PSR. <u>See</u> CR Docket No. 190.

A sentencing memorandum was filed on behalf of Ms. Schrader, as well as numerous letters of support. CR Docket No. 204. In the sentencing memo, counsel urged the court to depart downward from the USSG range or, in the alternative, to implement a variance. <u>Id.</u> Counsel argued that imprisoning drug addicts was not constructive. <u>Id.</u> Counsel also emphasized Ms. Schrader's extraordinary civic, charitable, and employment contributions to society. <u>Id.</u> Counsel pointed out that, though she was addicted, Ms. Schrader was able to provide for family members both inside and outside her home. <u>Id.</u>

Forty-six letters of support for Ms. Schrader were submitted to the court for consideration prior to sentencing, including a letter from a Jesuit priest and a son of a prominent United States Senator. <u>See</u> CR Docket Nos. 181, 184, 202, 210, 211 & 216. These letters all extolled Ms. Schrader's good character, how hard she worked, her contributions to society, her family's need for her continued presence, and the fact that her addiction was to blame for much of her involvement in the conspiracy. <u>Id.</u>

Ms. Schrader also submitted a written allocution statement. CR Docket No. 205. In that document, she admitted her involvement in the drug conspiracy by allowing others to use her home to sell drugs and by buying and using drugs in that home. Id. Ms. Schrader indicated she was now sober and had learned from her experience. Id. She indicated a desire to attend substance abuse treatment. Id. Finally, she asked for a sentence of probation, promising the court she would never use drugs again and would never appear in court again as a defendant in a criminal case. Id.

Ms. Schrader's sentencing hearing was held on April 10, 2015. See CR Docket No. 237. Because many of Ms. Schrader's objections to the PSR were factual, the government put on evidence at the hearing. Id. at p. 3. FBI Agent Dan Cooper testified. Id. at pp. 3-22. Agent Cooper had been the lead agent on the case. Id. He testified that over a 10-year period, he obtained information from numerous people that a different series of drug dealers were allowed to sell drugs out of Ms. Schrader's house. Id. Those dealers included Angelo Respects Nothing; Ms. Schrader's own daughter, Whitney Zephier; Pat Brewer; Pablo LeBeau; Neil LeBeau; Marie Zephier, another daughter of Ms. Schrader's; Wesley Jacob; Ezra Zephier; and Gerald LeBeau. Id. Agent Cooper went through amounts of drugs reported to him during the period of time covered by the indictment and estimated at least one thousand grams of cocaine were sold out of Ms. Schrader's house. Id.

Agent Cooper also testified Pablo LeBeau and Miles Goings bought, sold, and used cocaine at Ms. Schrader's residence when they were minors. Id. Agent Cooper also testified that right before the December trial, Ms. Schrader

14

spoke to Kateri Patton and told her not to testify or, if she did testify, not to testify to anything that would hurt Ms. Schrader.  Id.  Agent Cooper testified at least three of Ms. Schrader's tribal court clients which she represented told Agent Cooper they paid Ms. Schrader for her services with cocaine.  Id.  Agent Cooper testified that Holly Wilson had testified that Ms. Schrader discussed this practice with Ms. Wilson, saying she got "a G" for her work or she got "goodies" in payment, which meant cocaine.  Id.

The district court then proceeded to work her way through all 26 of Ms. Schrader's objections to the PSR, granting some and denying others.  Id. at pp. 22-56.  As to the objections regarding drug quantity, the court based its conclusion as to quantity on the testimony adduced at trial as well as some of Agent Cooper's testimony at the sentencing hearing.  Id. at pp. 41-43.  The court arrived at a range of cocaine attributable to Ms. Schrader of 400 to 500 grams of cocaine as follows:  Dave White Plume 3.5 grams (trial testimony); Twila LeBeau 50 grams (trial testimony); Holly Wilson 3 grams plus a ¾ full gallon zip-lock bag (trial testimony); Everett Catches ½ gram (trial testimony); Charles Richards 1 gram (trial testimony); Pat Brewer 100 grams (Agent Cooper's sentencing hearing testimony); Cayenne Janis 50 grams (Cooper's sentencing hearing testimony); Heather Janis 50 grams (Cooper's sentencing hearing testimony); Irene Tuttle 0 grams (trial testimony—no quantity mentioned); Kelsey Twiss 50 grams (trial testimony); Robert Pond 2 grams (Cooper's sentencing hearing testimony); and Whitney Zephier 20 grams (Cooper's sentencing hearing testimony).  Id.

The district court arrived at its estimate conservatively, attempting to avoid any double-counting of amounts fronted and amounts purchased. Id. at p. 42. In addition, the court noted its estimate of 400 to 500 grams attributable to Ms. Schrader was similar to the amounts other similarly-situated coconspirators in the drug conspiracy had admitted to: Holly Wilson 300 grams; Pablo LeBeau 500 grams; Whitney Zephier 500 grams; Twila LeBeau 400 grams; Marie LNU 500 grams; and Pat Brewer 400 grams. Id.

One of Ms. Schrader's objections was to the PSR's denial of a downward adjustment for acceptance of responsibility. Counsel for Ms. Schrader argued the adjustment should not be denied simply because Ms. Schrader availed herself of her right to trial and that Ms. Schrader had never denied that she was an addict. Id. at pp. 43.

The government pointed out that, although Ms. Schrader admitted to her addiction pretrial, she denied any involvement in the drug conspiracy. Id. at p. 43-44. Also, the government asserted that even after the jury's verdict, Ms. Schrader continued to deny her role in the conspiracy to the extent found by the jury. Id.

The district court acknowledged that acceptance of responsibility may still apply when a defendant goes to trial, but that Ms. Schrader was not availing herself of her right to trial simply to pursue a constitutional challenge or a factual matter unrelated to guilt. Id. at pp. 44-45. The court agreed with the government that, even post-trial, Ms. Schrader continued to deny her full involvement in the conspiracy. Id. The court denied the objection. Id.

Another of counsel's objections to the PSR was to the enhancement based on Ms. Schrader being a manager or supervisor and whether minors were involved, a 3-point upward adjustment under the USSG. Id. at p. 51. The court agreed with Ms. Schrader's argument and granted the objection. Id. at pp. 54-55. The court found that Ms. Schrader's primary involvement was providing the location for drug transactions, but that those transactions often took place when she was not even at home. Id. The court noted an enhancement had already been applied for maintaining a premises for drug transactions, and the court declined to use that same conduct to apply the manager/supervisor enhancement. Id.

After ruling on all of counsel's objections to the PSR, the court announced the amended total offense level was 24, a reduction of 5 points due to counsel's objections. Id. at p. 56. An offense level of 24 with a criminal history category of I yielded an advisory USSG range of 51 to 63 months' imprisonment. Id. Thus, counsel's objections reduced Ms. Schrader's low-end of the USSG range by 36 months (87-51 mos.).

The district court considered all the letters of support that had been submitted on behalf of Ms. Schrader. Id. at p. 57. The court also considered live testimony from various witnesses.

A substance abuse provider testified that Ms. Schrader met the criteria for cocaine and alcohol dependence. Id. at p. 57. She testified she would like to see Ms. Schrader attend inpatient treatment. Id. at pp. 57-58.

Ms. Schrader's cousin testified to the role model she had been in their family; a spiritual advisor who worked with Ms. Schrader testified to her

courage, remorse, and desire to change; a coworker in the social services field testified to Ms. Schrader's commitment to the community; a former police officer who had grown up with Ms. Schrader testified that there are people who belong in prison and that Ms. Schrader was not one of those people; another friend and former military member and former law enforcement officer testified similarly; another witness who had been a foster parent testified about Ms. Schrader's social services work; Ms. Schrader's sister testified and asked for leniency, saying Ms. Schrader was an addict, but a good person and not a criminal.  Id. at pp. 58-75.

Counsel for Ms. Schrader addressed the court, asking for a probationary sentence.  Id. at p. 75.  Counsel pointed out that there was no mandatory minimum statutory sentence and that the USSG were advisory only.  Id.  She also argued that Ms. Schrader was a first-time offender and that sending her to substance abuse treatment would make more sense than sending her to a federal penitentiary.  Id.

Ms. Schrader herself addressed the court too.  She began by telling the court she felt like she had been "run over by the Rule 35 train," a reference to a sentence-reduction tool for conspirators who cooperate with the government.  Id. at p. 75.  Her next words disparaged the trial testimony of friends she clearly thought were disloyal because they had been guests in her home and then testified against her.  Id. at pp. 75-76.  Ms. Schrader pointed out that all of these witnesses had themselves been indicted and were testifying pursuant to cooperation agreements.  Id.  Ms. Schrader told the court she felt this "might have upset the truth a little bit."  Id. at p. 76.  She also complained that she felt

the sentencing hearing was "spiraling out of control" because at first the focus was on her behavior, then it shifted to actions occurring at her house, and now she felt she was "on trial for additional charges [not in the indictment] at sentencing." Id.

Ms. Schrader told the court she understood conspiracy law, but she could not accept it. Id. She stated she believed it was unconstitutional. Id. She analogized conspiracy law to "long time ago witch hunts." Id. Ms. Schrader admitted to the court she had conspired to distribute 400 to 500 grams of cocaine. Id. at p. 77. She stated she participated in the conspiracy because she was an addict. Id. She expressed the wish that "the cultural and the healing and the human part" could be put into the legal system. Id. She pointed out that, even during her addiction, she still ran a business, took care of her family, and helped a lot of people. Id. She stated she and her daughters were now sober, and for that she was thankful. Id. at pp. 77-78.

Ms. Schrader pointed out that she never sold drugs for a living, unlike Twila LeBeau, a coconspirator who did so. Id. at pp. 78-79. Ms. Schrader pointed out that a different district judge had sentenced Ms. LeBeau to a period of time served, which was 7 months. Id. at p. 79.

The district court acknowledged the favorable testimony about Ms. Schrader and the favorable information in the PSR. Id. at pp. 82-85. But she noted that Ms. Schrader's participation in the drug conspiracy was not merely that of an addict; she let drugs infect her home, her family, and her professional practice as a lay tribal advocate. Id. The court considered various grounds for departure under the USSG, but determined that none of them

applied.  Id. 85-87.  The district court sentenced Ms. Schrader to 51 months'

imprisonment followed by 3 years' supervised release, which was the very

bottom of Ms. Schrader's adjusted USSG range.  CR Docket Nos. 219 & 220.

**D.    Appeal**

Ms. Schrader filed a direct appeal.  CR Docket No. 227.  Counsel filed an

appellate brief raising the following issues:

1.  the district court erred in denying Ms. Schrader's motion for acquittal

    at the close of evidence because 18 U.S.C. §§ 3242 and 3742(a) violate

    the Equal Protection clause of the Fifth Amendment by treating Native

    Americans living on Indian Reservations disparately;[3]

2.  the district court failed to conduct an analysis of 18 U.S.C. § 3553(a)

    at sentencing;

3.  the district court erred at sentencing by treating the USSG as

    mandatory rather than advisory;

4.  the district court violated Ms. Schrader's Confrontation Clause rights

    under the Sixth Amendment by relying on facts not presented to the

    jury at the sentencing hearing; and

5.  Ms. Schrader's sentence was unreasonable because she was

    statutorily eligible for a probationary sentence.

---

[3] Section 3242 provides that if there is jurisdiction to try an Indian for a crime committed in Indian Country under 18 U.S.C. § 1153, the defendant shall be tried in the same courts and in the same manner as would an offense committed within the exclusive jurisdiction of the United States.  See 18 U.S.C. § 3242.  Section 3742(a) provides that a notice of appeal of a criminal sentence may be filed to challenge a sentence imposed in violation of the law, a sentence resulting from an incorrect application of the USSG, a sentence imposed that is greater than the USSG range, or a plainly unreasonable sentence to which the USSG do not apply.  See 18 U.S.C. § 3742(a).

See United States v. Schrader, Appellant's Brief (8th Cir. May 20, 2015).

Ms. Schrader filed her own *pro se* brief 40 days later.  See id. Appellant's Pro Se Supplemental Brief (8th Cir. June 30, 2015).  She raised these issues in her brief:

1. the method and quality of the investigation, conviction and sentencing.  There is a lack of local law enforcement involvement and cooperation of available entities as mandated by the 2010 Tribal Law and Order Act, the Indian Self-Determination and Education Assistance Act and all treaties and agreements/contracts with the Oglala Sioux Tribe nee the Oglala Lakota Nation.

2. Reversible error in denying the motion for acquittal.  The defendant was not read her Miranda rights and excessive force was used in defendant's arrest; no physical evidence of drugs was introduced at trial; government witnesses had motives to lie because they had been indicted and were testifying pursuant to proffer agreements; the indictment was unconstitutionally vague because it included no dates or drug amounts.

3. 18 U.S.C. §§ 3242 and 3742(a) violate the Equal Protection clause because they result in disparate treatment of Native Americans living on Indian Reservations.

The Eighth Circuit considered both counsel's brief and Ms. Schrader's *pro se* brief.  See United States v. Schrader, 622 Fed. Appx. 604, 605 (8th Cir. 2015) (*per curiam*). Construing both briefs to raise a sufficiency of the evidence argument (possibly because both argued no physical evidence was introduced

at trial), the court noted the trial evidence showed many witnesses who had used, bought and sold cocaine at Ms. Schrader's house over a period of many years.  Id.  The court concluded the evidence was sufficient to support the jury's verdict.  Id.

As to the sentencing issues, the court noted the record did not show the sentence was procedurally deficient, substantively unreasonable, or constitutionally deficient.  Id.  The court cited cases for the proposition that allowing evidence to satisfy the preponderance standard satisfies due process at sentencing.  Id. (citing United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc); United States v. Villareal-Amarillas, 562 F.3d 892, 895-96 (8th Cir. 2009)).  The court also cited authority that use of hearsay evidence at sentencing was permissible.  Id. (citing United States v. Shackelford, 462 F.3d 794, 796 (8th Cir. 2006) (per curiam)).

The court concluded after conducting an independent review that there were no nonfrivolous issues.  Id.  Accordingly, the court affirmed the conviction and sentence.  Id.  The court issued its mandate, making the decision final, on December 18, 2015.  See CR. Docket No. 302.

**E.     Ms. Schrader's Current Motion to Vacate, Correct or Set Aside**

Ms. Schrader filed her current motion to vacate, correct or set aside her sentence on December 2, 2016.  See Docket No. 1.  In that motion,
Ms. Schrader alleges eight grounds for relief:

1. Excessive use of force at arrest and failure to read Ms. Schrader her Miranda rights upon arrest.

2. Ineffective assistance of counsel—nine separate allegations.

22

3. Quality of investigation and presentence investigation—Marie Zephier told Ms. Schrader the FBI encouraged her to lie, US Probtation did not communicate and cooperate with the Oglala Sioux Tribe, the amount of cocaine was determined at sentencing by hearsay.

4. Lack of tribal involvement/input in investigation through sentencing phases of this case in violation of tribal self-governance and the 2010 Tribal Law and Order Act;

5. Defendant's home was not maintained for drug distribution;
   Ms. Schrader states she used her house primarily for legal enterprises and the care of her family; drug use and drug addiction was a small percentage of any day in which she used [drugs] and the defendant despised her [drug use] behavior and its effects; her daughters' drug use was a burden and stressor on defendant.

6. Appearance of Impropriety—the district court and the government's lawyer were friendly and engaged in casual and non-chalant [sic] conversation, and the defendant was penalized for exercising her right to have a trial.

7. Defendant Rehabilitation and Re-entry—defendant's felony conviction greatly inhibits her ability to use her professional skills and to secure employment, thereby contributing to her family and society, defendant seeks a suspended imposition of sentence.

8. Minor Role Amendment 794—defendant qualified for the minor role adjustment under the USSG provided for by Amendment 794.

See Docket No. 1-1 at pp. 1-12.  Ground two, above, included 9 separate allegations of ineffective assistance of counsel, set forth in detail below.

The government has moved to dismiss Ms. Schrader's § 2255 motion without holding an evidentiary hearing.  See Docket No. 17.  Ms. Schrader resists that motion.  See Docket No. 28.

## DISCUSSION

### A.    Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case were often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.  Where the allegation for

relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255. Relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion for the first time. See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in

cases where the district court has developed a record on the issue).  Therefore,

no procedural default analysis is required before examining petitioner's claims

of constitutionally-deficient counsel.

**B.**	**Claims Barred by Procedural Default or the Rule Against Relitigation**

    **1.**	**Procedural Default**

The government argues in its brief that Ms. Schrader has procedurally

defaulted on several claims because she did not raise them on direct appeal.

Accordingly, the court addresses this argument first before addressing the

merits of Ms. Schrader's petition.

Generally, petitioners are precluded from asserting claims pursuant to

§ 2255 that they failed to raise on direct appeal.  <u>Frady</u>, 456 U.S. at 167-68;

<u>McNeal</u>, 249 F.3d at 749.  When a § 2255 petitioner asserts a claim that is

procedurally defaulted because it was not raised on direct appeal, the claim

can only proceed after the petitioner has shown either actual innocence or that

the procedural default should be excused because there was both cause for the

default and prejudice to the petitioner.  <u>McNeal</u>, 249 F.3d at 749.  Therefore,

for the claims not raised in Ms. Schrader's direct appeal, Ms. Schrader must

show both cause for why she failed to raise these issues on direct appeal as

well as actual prejudice caused by these errors.  She does not allege actual

innocence.

The issues in Ms. Schrader's § 2255 motion that were not previously

raised in her direct appeal, either by counsel or by Ms. Schrader herself in her

*pro se* brief, are issues 6, 7, and 8.  Ms. Schrader never attempts to show cause

and prejudice for her default of these issues.  Nor does she allege a claim of

actual innocence in order to excuse her default. Accordingly, the court recommends claims 6, 7, and 8[4] from Ms. Schrader's § 2255 motion be dismissed on the grounds that they are procedurally defaulted. In the event a reviewing court disagrees with this analysis, however, the court addresses the merits of these claims below.

**2.    Relitigation**

The government also argues Ms. Schrader is precluded from raising certain issues in her § 2255 motion because she already raised those issues on direct appeal. Having done so, the government argues, she may not relitigate them in collateral proceedings such as this one. See United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).

The government is right on both assertions. Ms. Schrader previously presented the following issues to the Eighth Circuit: claims 1, 3, and 4. Therefore, those three issues cannot be relitigated in this § 2255 motion. Claim 1 deals with excessive use of force at arrest and failure to read Ms. Schrader her Miranda rights. Claim 3 concerns the use of hearsay testimony at sentencing to determine the amount of cocaine attributable to Ms. Schrader. Claim 3 and 4 concern the failure of the federal prosecutors, investigators, and probation officers to obtain the input and involvement of tribal government pursuant to the 2010 Tribal Law and Order Act. These issues were all previously presented to the Eighth Circuit by either counsel for

---

[4] Reiterating, claim 6 was appearance of impropriety; claim 7 was defendant's rehabilitation and re-entry; and claim 8 was Amendment 794. See Docket No. 1-1 at pp. 10-12.

Ms. Schrader or by Ms. Schrader herself.  Therefore, Ms. Schrader cannot relitigate these issues herein.

"With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal."  Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (*en banc*) (citing Davis v. United States, 417 U.S. 333, 346-47 (1974)); Wiley, 245 F.3d at 752; United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000) (*per curiam*).  Issues may be relitigated in a § 2255 motion if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  Davis, 417 U.S. at 346-47; Sun Bear, 644 F.3d at 704.  They may also be relitigated where the petitioner presents convincing new evidence of actual innocence.  Wiley, 245 F.3d at 752 (citing Weeks v. Bowersox, 119 F.3d 1342, 1350-51 (8th Cir. 1997) (*en banc*)).[5]

A claim is deemed to have been properly presented and exhausted even if the appellate court did not address the claim on the merits.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Castille v. Peoples, 489 U.S. 346, 351-52 (1989); Teague v. Lane, 489 U.S. 288, 298 (1989); Smith v. Digmon, 434 U.S.

---

[5] Ms. Schrader does not attempt to argue actual innocence, acknowledging the drug activity that occurred in her house.  She also does not attempt to argue fundamental defect.  In any event, there is no fundamental defect.  The excessive force and Miranda issues did not bear on Ms. Schrader's trial at all because the government obtained no evidence from Ms. Schrader or her house on the occasion on which Ms. Schrader alleges these Fourth and Fifth Amendment violations occurred.  Furthermore, the 2010 Tribal Law and Order Act (Pub. L. 111-211, H.R. 725, 124 Stat. 2258) (July 29, 2010), does not apply to the Oglala Sioux Tribe because it has not adopted, *inter alia*, a provision for court-appointed counsel necessary to trigger the provisions of the Act.

332, 333-34 (1978).[6]  Here, Ms. Schrader fairly presented these three issues to the Eighth Circuit.  Even though the Eighth Circuit did not address those issues on the merits, relitigation now is prohibited.

Claim 5 in Ms. Schrader's § 2255 motion is construed by this court to raise a sufficiency of the evidence argument.  In claim 5, Ms. Schrader argues that the evidence showing her house was used for drug distribution was insufficient to reach that conclusion because Ms. Schrader also used the house for legal enterprises and the care of her family.  Although Ms. Schrader admits in her § 2255 motion that she and her daughters used drugs in the house, Ms. Schrader argues the drug-related use of the house was a small percentage of the overall legal use of the house.

The Eighth Circuit addressed a sufficiency of the evidence argument in its *per curiam* opinion.  See Schrader, 622 Fed. Appx. at 605.  However, in examining both counsel's appellate brief and Ms. Schrader's appellate brief, this court discerns that neither Ms. Schrader nor her counsel raised a sufficiency of the evidence argument on appeal.  Reading Ms. Schrader's § 2255 motion liberally, then, the court will not conclude that Ms. Schrader has already litigated this claim since, in fact, she did not raise the issue in her appellate briefs.  The court will address claim 5 on the merits below.

---

[6]Although these cases all involve petitions for habeas relief in federal court by state prisoners under 28 U.S.C. § 2254, the procedural default rules applicable in § 2254 cases have equal application in § 2255 cases like this one.  Frady, 456 U.S. at 166-69.

## C.     Appearance of Impropriety

Under the heading appearance of impropriety, Ms. Schrader talks about three topics in her brief: (1) the "casual and non-chalant" conversation between the prosecutor and the district court; (2) the disparate sentences between Ms. Schrader (who earned her living lawfully and merely consumed cocaine on the side), with other coconspirators who actually made their living selling drugs; and (3) the fact the government relied solely on testimony at trial and did not introduce any exhibits of actual drugs. See Docket No. 28 at p. 16. The third allegation the court construes to go to the sufficiency of the evidence. It is discussed below. The other two assertions are discussed here.

Ms. Schrader asserts that the district court and the prosecutor had known each other for 15 years. She asserts, on the one hand, that this gave rise to an appearance of impropriety. On the other hand, Ms. Schrader states "in a realistic evaluation, it is not unreasonable for professionals in the same field to be familiar with each other and have informal, casual conversation during the course of the Plaintiff's trial." See Docket No. 28 at p. 16. Ms. Schrader does not allege that the relationship between the prosecutor and the judge resulted in any untoward influence on the jury or that it affected the introduction of evidence or the instructions to the jury. She does not address any statute or constitutional provision she believes was violated.

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255. Relief is available for only those errors which

constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill, 368 U.S. at 428; Peguero, 526 U.S. at 27-30. Ms. Schrader does not allege any fundamental defect in her trial arising from the fact the prosecutor and the judge knew each other. To the contrary, she acknowledges that it is common that professionals in the same field will often be acquainted with each other. Accordingly, this allegation is insufficient to state a claim for relief under § 2255.

Ms. Schrader also argues the disparate sentences between herself and Pat Brewer, Provost, Richards, White Plume, Twiss and LeBeau give rise to an appearance of impropriety. She compares her "four-year" sentence against Brewer's probationary sentence and asserts the disparity "taints the view of federal justice and the trust responsibility that the federal government is entrusted with for our tribe and members." See Docket No. 28 at p. 16. Other than Mr. Brewer, Ms. Schrader does not state what sentences the other comparators received, she only asserts they sold drugs to make a living and she did not.

Thomas Patrick Brewer was charged in 5:14-CR-50049-KES. He did receive a probationary sentence. See United States v. Brewer, 5:14-CR-50049-KES, Docket No. 295 (D.S.D.). However, that bare fact alone does not create a fundamental defect of federal statutory or constitutional magnitude. Without disclosing confidential information, the PSR in Ms. Schrader's case revealed she had been involved in the cocaine conspiracy for approximately 10 continuous years, while Mr. Brewer's involvement was for a much shorter

period of time.  Mr. Brewer had no children to whom he sold drugs or exposed to drugs in his home (he had no children).  He was not in a position of trust in the community (i.e. a lay tribal court advocate), and did not betray that position of trust with his drug activities.  He was mostly unemployed and cared for his elderly mother until she died.   Unlike Ms. Schrader, he did not have the benefit of any higher education as he did not graduate from high school.  Also, by pleading guilty, he received a downward USSG adjustment for acceptance of responsibility.

In short, merely examining even just the surface of things, when comparing Ms. Schrader's situation to that of Mr. Brewer's, there were significant differences in their circumstances that would justify the disparate sentences.  Ms. Schrader had many advantages in life which Mr. Brewer did not enjoy-- Ms. Schrader came from an intact family and received education through the level of a Master's Degree.  Despite those advantages and her position of trust in the community, her involvement in the drug conspiracy was for a longer period of time and was more serious.  She betrayed the trust her children placed in her and the trust her court clients and the tribal court placed in her.  The difference in the sentences that Ms. Schrader and Mr. Brewer received, standing alone, does not give rise to a fundamental defect of sentencing.  The court concludes that Ms. Schrader has not shown an appearance of impropriety of a degree that brings this claim within the scope of § 2255.  Accordingly, the court recommends granting the government's motion to dismiss on this claim.

**D.     Sufficiency of the Evidence**

Ms. Schrader asserts disparate arguments under disparate headings, which all go toward a sufficiency of the evidence argument.  She argues that because the legal uses of her house preponderated over illegal drug use in the house, she should not have been convicted.  She argues the fact the government introduced no actual drugs as exhibits at trial rendered the verdict impermissibly based solely on testimony, testimony "that in many instances simply were fabricated or not true."  Ms. Schrader does not favor the court with specific instances of what she believes were false testimony at her trial.[7]

The Supreme Court has held that an allegation that the evidence was insufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a federal constitutional claim.  Jackson v. Virginia, 443 U.S. 307, 321 (1979).  This is because the Constitution requires proof of guilt beyond a reasonable doubt for a criminal conviction.  In re Winship, 397 U.S. 358, 364 (1970).  This requirement stems from the Due Process clauses of the Fifth and Fourteenth Amendments.  Id.  The Due Process clause requires proof beyond a reasonable doubt in support of every essential element of the crime of conviction.  Jackson, 443 U.S. at 313-14.

Thus, in order to satisfy the Due Process clause, the jury has to have been instructed on the beyond-a-reasonable-doubt standard *and* the jury has to have rationally applied that standard to the evidence.  Id. at 317-19.  When

---

[7] She does state that her daughter, Marie Zephier, gave a statement to Agent Cooper and the written memo reciting Zephier's statement was not accurate.  See Docket No. 101 at pp. 3-4.  However, Ms. Zephier did not testify at Ms. Schrader's trial.  So this example, even if true, cannot be considered as part of the evidence adduced at trial.

a federal court reviews a sufficiency of the evidence claim as to a conviction, the appropriate standard to apply is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319, 324.

When the record contains evidence with conflicting inferences, the court must presume that the jury resolved the evidentiary conflicts in favor of the government even if the record does not affirmatively show the jury did so. Jackson, 443 U.S. at 326. The prosecution need not have ruled out every hypothesis except that of the petitioner's guilt beyond a reasonable doubt. Id.

Here, the jury was properly instructed on the presumption of Ms. Schrader's innocence and the government's burden of persuasion beyond a reasonable doubt. See CR Docket No. 146 at pp. 13-14. So the only question presented is whether the jury reasonably applied that instruction. The court concludes the jury did so.

The evidence, set forth in detail above, was overwhelming as to Ms. Schrader's guilt. Not only did she allow drug sales to take place out of her house for a span of 10 years by many different sellers, but she was clearly aware of that activity as she frequently performed what the witnesses described as "middling"—that is, she personally would take the purchaser's money, give it to the seller, obtain the drugs, and then give the drugs to the purchaser.

Ms. Schrader's own witnesses did not contradict this testimony. Although they all testified they never saw Ms. Schrader use drugs and never knew her to be under the influence, none of the witnesses was with

34

Ms. Schrader 24 hours a day for years. Also, the witnesses who had been to Ms. Schrader's house described observing heavy traffic of visitors in and out of that house. Inadvertently, these witnesses confirmed the drug-related traffic that the government's witnesses testified to. Viewing the evidence in the light most favorable to the prosecution, the court concludes that a rational trier of fact could have found the essential elements of the crime of conspiracy to distribute cocaine beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. at 319, 324. The court recommends denying relief on Ms. Schrader's sufficiency of the evidence claim.

**E.    Consideration of Ms. Schrader's Addiction**

Claim 7 of Ms. Schrader's § 2255 motion asserts that her felony conviction greatly inhibits her ability to use her professional skills and to secure employment. She states that she seeks a suspended imposition of sentence, a sentence not available in federal court at all. <u>See</u> Docket No. 1-1 at p. 11. In her brief in opposition to the government's motion to dismiss, she expounds on the reason for her drug addiction and asserts that addicts should be given mental health help rather than being incarcerated. <u>See</u> Docket No. 28 at pp. 17-19.

Despite Ms. Schrader's citation to the holding of <u>Griswold v. Connecticut</u>, claim 7 fails to state a fundamental claim or violation of a federal statute or constitutional provision. Whether and how severely to punish addicts for their consumption of illegal drugs is a policy question secured to the sound discretion of Congress. Congress has chosen to punish the use, possession and distribution of illegal drugs. Ms. Schrader has not shown that

fundamental rights are violated by this policy decision.  Furthermore, the evidence in her case established that Ms. Schrader was not merely an addict. She made a positive and affirmative contribution over many years to a conspiracy to distribute drugs on the Pine Ridge Indian Reservation. Ms. Schrader has not shown that Congress violated her rights by making such activity a crime.  The court recommends denying relief on this ground.

## F.    Ineffective Assistance of Counsel

Unlike the above-discussed claims, claims of ineffective assistance of counsel are generally not heard on direct appeal.  Campbell, 764 F.3d at 892; Lee, 374 F.3d at 654.  Therefore, ineffective assistance claims can permissibly be raised for the first time in a § 2255 motion.

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant

must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id.

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). American Bar Association standards and similar directives to lawyers are only guides as to the reasonableness of counsel's conduct, they are not its definitive definition. Id. The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the

sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009).

In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence 'both that adduced at trial, and the evidence adduced in the habeas proceeding'" and "reweigh it against the evidence in aggravation." Id. at 40-41. It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of her case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698. The court now turns to each of Ms. Schrader's 9 assertions that counsel was ineffective.

### 1. Counsel was Unprepared and Presented Character Witnesses

Ms. Schrader is short on specifics of how she believes her counsel was unprepared. One solid factual allegation Ms. Schrader makes is that counsel did not present an alibi defense as Ms. Schrader wanted. An alibi defense may be submitted to the jury if the crime requires the defendant's presence at the scene of the crime and defendant can show he was elsewhere at the time of the crime. United States v. Webster, 769 F.2d 487, 490 (8th Cir. 1985). If the defendant's presence at the scene is not necessary, the alibi defense should not be submitted to the jury. United States v. Anderson, 654 F.2d 1264, 1270-71 (8th Cir. 1981).

The crime of conspiracy to distribute drugs did not require that Ms. Schrader be at her home at the time she knowingly permitted her home to be used for drug distribution. <u>Anderson</u>, 654 F.2d at 1270-71. Therefore, even if counsel had presented an alibi defense, it would have been unavailing. Ms. Schrader cannot, therefore, demonstrate prejudice under <u>Strickland</u>.

Ms. Schrader asserts her fellow tribal court lay advocate, Holly Wilson, testified that Ms. Schrader was present at a controlled buy in April, 2012. Ms. Schrader faults counsel for misplacing Ms. Schrader's 2012 calendar to prove that Ms. Schrader could not have been present for the controlled buy.

Ms. Wilson testified at Ms. Schrader's trial. <u>See</u> CR Docket No. 235 at pp. 125-43. Ms. Wilson testified she bought cocaine at Ms. Schrader's house numerous times. <u>Id.</u> at p. 133-34. Sometimes Ms. Wilson purchased directly from Pablo LeBeau, Neil LeBeau, Gerald LeBeau, and Angelo Respects Nothing at Ms. Schrader's house. <u>Id.</u> at p. 135-36. Other times, she would hand her money to Ms. Schrader and Ms. Schrader would take the money to the drug dealer, obtain the cocaine, and bring the cocaine back and give it to Ms. Wilson. <u>Id.</u>

Ms. Schrader made several comments to Ms. Wilson about receiving cocaine in payment for her services as a lay tribal advocate. <u>Id.</u> at pp. 132-35. Ms. Schrader made several comments to Ms. Wilson about Gers paying her in cocaine for using her house to distribute drugs from. <u>Id.</u> at pp. 135-36.

In addition to the above testimony, Ms. Wilson testified to conducting a controlled buy at Ms. Schrader's house for $300 at the request of Everett Catches. <u>Id.</u> at p. 137-38. She purchased the drug from Pat Brewer at

Ms. Schrader's house on this occasion.  Id.  On Ms. Wilson's way out of the house, Ms. Schrader asked Wilson to donate some of her cocaine "for the house."  Id. at p. 138.

In her testimony, Ms. Wilson did not specify a date that this controlled buy took place.  Id.  Therefore, even if counsel had Ms. Schrader's 2012 date book, it would have little availed her since Ms. Wilson did not testify to a specific date.  Furthermore, Ms. Wilson's testimony included numerous other instances when Ms. Schrader engaged in drug use, drug purchases, and allowing her house to be used for distributing drugs rather than simply the single instance of the controlled buy.[8]

Here, Ms. Schrader's role in the offense was alleged to have taken place in her own home over a period of ten years—and not just by Holly Wilson.  *All* of the government's witnesses testified to this.  Agent Cooper stated at sentencing the statements he had collected from witnesses over the course of his investigation showed cocaine was being continually distributed from Ms. Schrader's house from the 1990s up to the date of her arrest in 2014, well over a 10-year span of time.

The government witnesses, because they were testifying about events that had taken place at some time far removed from the date of trial, were

---

[8] Ms. Schrader also faults counsel for allegedly not bringing out information to show that she and Ms. Wilson were trial adversaries.  This is not true.  On cross-examination, counsel elicited Ms. Wilson's statement that she and Ms. Schrader were rivals and "would go at one another like a cat and dog."  See CR Docket No. 235 at p. 142.  Ms. Wilson also testified on cross-examination that she and Ms. Schrader almost came to physical blows in November, 2012. Id.  This near fistfight came about several times in the women's shared history. Id.

understandably unable to pin their testimony down to a specific day and a specific time on that day. Even if Ms. Schrader had wanted to present an alibi defense, it would have been impossible. Given the evidence the government presented, Ms. Schrader would essentially have had to show that she did not occupy her home at all on any day of the preceding five to six years. Even Ms. Schrader in her § 2255 motion does not try to allege this was the case.

Even if an alibi defense was desired by Ms. Schrader, she cannot show prejudice. It would have been impossible for such a defense to be successful under the government's evidence. Hence, Ms. Schrader cannot show prejudice under Strickland.

As to the remaining vague and conclusory allegation that counsel was "unprepared," that allegation lacks the required detail to support an ineffective counsel claim. "A habeas corpus petitioner, alleging ineffective assistance of counsel, must show that a particular act or omission fell below the standard acceptable for attorneys in the same or similar circumstances." Beard v. Lockhart, 779 F.2d 23, 26 (8th Cir. 1985) (citing Strickland, 466 U.S. at 693). A general allegation, such as counsel was not "fighting" or was "unprepared" is insufficient to warrant habeas relief. Id. The court recommends denying relief on Ms. Schrader's first allegation of ineffective assistance of counsel.

### 2. Witnesses Had Not Been Interviewed and Prepared

Ms. Schrader makes the general and conclusory allegation that counsel did not interview and prepare witnesses prior to trial and that the content and order of their testimony was not established. See Docket No. 28 at p. 6. The only specific allegation in this regard Ms. Schrader makes is that Leah Fyten,

who lives in Flandreau, South Dakota (some 400 miles away from the locus of the trial in Rapid City), could not testify due to weather and road conditions. Id. Ms. Schrader does not say what Ms. Fyten would have testifed to had she appeared, only that she would have "testif[ied to] valuable information that could have strengthened defense arguments." Id.

First, Ms. Schrader does not explain how counsel's performance caused Ms. Fyten not to appear—Ms. Schrader herself states Ms. Fyten did not appear due to weather and road conditions. Id. Counsel's allegedly deficient performance could not have been responsible for bringing out bad weather and bad road conditions.

Second, Ms. Schrader does not explain what specifically Ms. Fyten would have said if she had been called. Ms. Schrader also does not explain how Ms. Fyten's testimony would have changed the outcome of trial. To prove prejudice, Ms. Schrader must show the uncalled witnesses would have testified in her defense, that their testimony would have been favorable, and that their testimony "probably would have changed the outcome of the trial." See Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990); Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994). In assessing ineffective assistance claims under the Strickland standard, "[t]he decision not to call witnesses is a virtually unchallengeable decision of trial strategy." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted, punctuation altered). The habeas court must avoid "the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." Id. (citations omitted, punctuation altered).

"Complaints of uncalled witnesses are not favored . . . because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). "[T]he petitioner ordinarily should explain . . . with some precision, the content of the testimony they would have given at trial." Lawrence, 900 F.2d at 130.

When an ineffective assistance of counsel claim is premised on failure by counsel to call a defense witness, the court is required to examine how that witness' testimony fits into the entire body of evidence before the judge or jury. Armstrong v. Kemna, 590 F.3d 592, 596 (8th Cir. 2010). The court must "consider: (1) the credibility of all witnesses, including likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." Id. Here, because Ms. Schrader has not specified what Ms. Fyten's testimony would have been had she been called as a witness, the court cannot engage in the above analysis.

As to Ms. Schrader's vague and conclusory allegation that counsel failed to prepare direct and cross-examinations for trial, this is simply too unspecific to serve as a basis for Strickland relief. Beard, 779 F.2d at 26. Accordingly, the court recommends that no § 2255 relief be granted on this ineffective assistance of counsel claim.

### 3. Counsel Failed to Object to Possession Instruction

Ms. Schrader was charged with a single count of conspiracy to distribute and to possess with the intent to distribute cocaine.  See CR Docket No. 2 at Count I, pp. 1-2.  The district court instructed the jury, in part, as follows regarding the law of conspiracy:

> The Indictment charges a conspiracy to commit two separate crimes:  distribution of cocaine and possession of cocaine with the intent to distribute.  For you to find that the government has proved a conspiracy, you must unanimously find that there was an agreement to act for at least one of these purposes.  You must unanimously agree which purpose or purposes motivated the members of the agreement to act.  If you are unable to unanimously agree on at least one of these purposes, you cannot find the defendant guilty of conspiracy.
>
> \* \* \*
>
> To help you decide whether the defendant agreed to commit the crime of possession of cocaine with the intent to distribute, you should consider the elements of a "possession" offense.  The elements of a possession of cocaine with the intent to distribute it are the following:
>
> - *One*, that a person was in possession of cocaine.
> - *Two*, the person knew that she was, or intended to be, in possession of a controlled substance;
> - *And Three*, the person intended to distribute some or all of the cocaine to another person.
>
> Remember that the prosecution does not have to prove that possession of cocaine with the intent to distribute actually occurred for this element of the "conspiracy" offense to be proved.

See Docket No. 146 at pp. 4-5.

While the jury was deliberating, they sent this note to the court:  "We are wondering if 'possession of cocaine with the intent to distribute' could be clarified more.  A few of us have questions about it."  See CR Docket No. 148.

After consultation with both counsel, the district court sent the jury the following response:

> The crime of possession with intent to distribute has three elements, which are:
>
> > *One,* the defendant was in possession of cocaine;
> > *Two,* the defendant knew she was in possession of cocaine, or she intended to be in possession of cocaine;
> > *And three*, the defendant intended to distribute some, or all, of the cocaine to another person.
> > The word "distribute" means to transfer.
>
> Remember that the prosecution does not have to prove that possession of cocaine with the intent to distribute actually occurred for this element of the "conspiracy" offense to be proved.
>
> This instruction should be taken together with the instructions I previously gave to you. The instructions must be considered as a whole.

See CR Docket No. 149.

In Step 1 of the verdict form the court gave the jury the choice of finding Ms. Schrader guilty or not guilty of conspiracy to distribute cocaine. See Docket No. 152. If the jury found Ms. Schrader guilty in Step 1 of the verdict, the jury was to indicate in Step 2 whether it found Ms. Schrader had distributed cocaine, possessed cocaine with the intent to distribute it, or both. Id. The jury found Ms. Schrader guilty at Step 1 and on Step 2 it indicated it found she had committed *both* distribution and possession of cocaine. Id.

Ms. Schrader asserts counsel was deficient in failing to object to the court's instruction on possession.[9] However, the jury could have found

---

[9] Ms. Schrader does not specify whether she argues counsel should have objected to the original instruction on possession or the supplemental instruction given after the jury posed its question. The court considers both together.

Ms. Schrader guilty on *either* possession or distribution. In fact, it found her guilty of *both*. Thus, even if the possession instruction was an inaccurate statement of the law (this court sees *no* inaccuracy), Ms. Schrader cannot show prejudice. She cannot show that the result of her trial would probably have been different. Even if the district court withdrew the issue of possession from the jury's consideration altogether, the jury was still free to consider distribution. The jury in fact found Ms. Schrader guilty of distribution in Step 2 of the verdict form. Therefore, the possession instruction, even if it were error, even if counsel should have objected to it, was not prejudicial. The court recommends denying habeas relief on this ground.

Ms. Schrader also asserts counsel should have objected to hearsay testimony. She never indicates *which* testimony should have been objected to. The jury trial transcript shows numerous objections on the basis of hearsay by defense counsel. In any event, out of court statements attributed to Ms. Schrader would be admissible because they are not within the definition of hearsay. See FED. R. EVID. 801(d)(2)(A). Out of court statements by coconspirators during and in furtherance of a conspiracy are also excluded from the definition of hearsay. See FED. R. EVID. 801(d)(2)(E). See also United States v. Spotted Elk, 548 F.3d 641, 661 (8th Cir. 2008) (citing United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978)) (outlining admissibility of hearsay statements of coconspirators in a conspiracy trial).

To the extent Ms. Schrader does not identify specifically what testimony should have been objected to, her claim is too vague and conclusory to serve as a basis for § 2255 relief. Beard, 779 F.2d at 26. For the same reason,

Ms. Schrader has not shown prejudice—without knowing which testimony might have been kept out pursuant to an objection that was sustained, the court cannot evaluate whether the result of the trial might have been different. The court recommends denying habeas relief on this ground.

### 4. Investigator Failed to Write a Report

The Sixth Amendment guarantees a right to effective assistance of *counsel,* not effective assistance of investigators. Ms. Schrader alleges the investigator should have reduced his finding to a report and that he should have provided the report to United States Probation to be included in Ms. Schrader's PSR. Ms. Schrader never alleges that *counsel* was deficient in making sure that the investigator took these steps. This claim is simply not cognizable as a Sixth Amendment ineffective assistance of counsel claim.

Even if the court were to construe Ms. Schrader's claim to be an allegation that counsel was deficient in not making sure the investigator reduced his findings to a report, Ms. Schrader never describes what would have been in that report and how it would have changed her PSR or her USSG calculation. To this extent, the claim is too vague and conclusory to form the basis for habeas relief. Beard, 779 F.2d at 26. The court recommends denying relief on this ground.

### 5. Counsel Misplaced Ms. Schrader's 2012 Date Book

This issue was discussed above in conjunction with the allegation that counsel was unprepared to present an alibi defense. Again, there is no alibi defense to conspiracy to distribute drugs because a defendant's presence is not necessary at the scene of the distribution in order to prove the crime.

Anderson, 654 F.2d at 1270-71. Also, because of the breadth and scope of the testimony of the government's witnesses, an alibi defense would have been impossible. Moreover, simply proving that Ms. Schrader had an alibi for one controlled buy with Holly Wilson in April, 2012, would not have had any possibility of changing the outcome of the trial. No prejudice has been demonstrated. The court recommends denying relief on this ground.

### 6.    Counsel's Communication Style was Condescending/Rude

In order for a Sixth Amendment ineffective assistance of counsel claim to be cognizable, Ms. Schrader must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A conversational style that is sometimes rude or condescending simply is not an allegation of a constitutional magnitude.

Ms. Schrader must also show that the deficient performance prejudiced her. Id. Ms. Schrader does not even attempt to demonstrate how the result of her trial could possibly have been different had counsel been more polite. The court recommends denying this ground for habeas relief.

### 7.    Counsel Failed to Object to Lack of Drug Amount in Indictment and to Pursue a Bill of Particulars

Ms. Schrader argues that counsel was deficient for failing to obtain a bill of particulars that specified the drug amounts. See Docket No. 28 at p. 7. As is clear from the recitation of pretrial events in Ms. Schrader's case, above, counsel *did* attempt to pin the government down as to amounts. She filed a motion for a bill of particulars asking for amounts. See CR Docket No. 40. The

district court said she did not need to know the amounts in order to prepare a defense for trial.  <u>See</u> CR Docket No. 66.  That the district court disagreed with counsel is not deficient conduct on counsel's part.

Ms. Schrader fails to show prejudice too.  How would this information have affected her trial if she had known before trial began what the amounts were?  She never states that she would have pleaded guilty.  As the district court recited at the sentencing hearing, all of Ms. Schrader's coconspirators had pleaded guilty and admitted to amounts ranging from 300 to 500 grams.  Ms. Schrader was certainly on notice from her coconspirators' cases what the likely amounts would be in her own case.  The court recommends denying relief on this ground both for failure to show counsel performed below professional standards and for failure to show prejudice.

### 8. Counsel Failed to Object to Hearsay at Sentencing or the Prosecution of a Tribal Member from an Indian Reservation

Ms. Schrader posits that counsel was deficient for failing to object to prosecution of a tribal member (herself) from an Indian Reservation in federal court.  Such an objection, if counsel had made it, would have been unavailing as Congress has granted the power to prosecute certain crimes in Indian Country, including drug crimes of general applicability.  <u>See</u> <u>United States v. Drapeau</u>, 414 F.3d 869, 877-78 (8th Cir. 2005) (federal government has jurisdiction to prosecute violations of federal drug crimes in Indian Country).  No habeas relief may be granted on this allegation because counsel was not deficient.  If counsel had made this objection, it would not have been sustained.  So Ms. Schrader has also failed to demonstrate prejudice

49

Ms. Schrader next argues that counsel should have objected to the use of hearsay testimony at her sentencing hearing. A court may rely upon hearsay to resolve disputed factual issues at sentencing so long as the evidence has "sufficient indicia of reliability." United States v. Sheridan, 859 F.3d 579, 583 (8th Cir. 2017) (citing USSG § 6A1.3(a)). This is true even if the evidence is not admissible under the rules of evidence at a trial. Id. Whether particular evidence is sufficiently reliable "depends on the facts of the particular case, and is committed to the sound discretion of the district court." Id.

"Hearsay evidence, even double hearsay, can be used at sentencing proceedings if it bears ' " 'sufficient indicia of reliability to support its probable accuracy.' " ' " United States v. Shackelford, 462 F.3d 794, 796 (8th Cir. 2006) (quoting United States v. Wise, 976 F.2d 393, 402 (8th Cir. 1992) (quoting USSG § 6A1.3(a))). When an out of court declarant makes a statement that is against his or her own penal interest, this is an exception to the hearsay rule that provides an indicia of reliability. Shackelford, 462 F.3d at 796.

The Eighth Circuit, in Ms. Schrader's direct appeal, noted the above law pertaining to reliance on hearsay at sentencing. See Schrader, 622 Fed. Appx. at 605. However, neither Ms. Schrader's *pro se* brief nor counsel's brief raised this precise issue. Instead, counsel argued that the district court violated Ms. Schrader's confrontation rights under the Sixth Amendment at sentencing by relying on facts not presented to the jury at the trial. Because the precise issue raised by counsel was not the hearsay issue, the court deems this issue not to have been raised on appeal and addresses it on the merits.

Ms. Schrader does not specify *what* particular hearsay evidence was presented at sentencing to which she believes counsel should have objected. Agent Cooper summarized his investigation at the sentencing hearing. <u>See</u> CR Docket No. 237 at pp. 3-22. However, much of what he testified to that would have qualified as hearsay was merely repeating what various witnesses at the trial testified to.

For example, when asked to give a list of persons Ms. Schrader had allowed to distribute drugs from her home, Agent Cooper named Angelo Respects Nothing. <u>Id.</u> at p.5. When asked to testify to which witnesses had told him about Angelo, Agent Cooper stated the following had named Angelo as a person who distributed drugs from Ms. Schrader's house over the years: Kay Ann Janis, Miles Goings, Charles Richard, Harry John Steele, Kelsey Twiss, Trish Pond, Dave White Plume, Twila LeBeau, Miles Goings, Holly Wilson, and Robert Pond. <u>Id.</u> Agent Cooper's testimony would have been hearsay—he was testifying to out of court statements made by these witnesses identifying Angelo as a drug distributor who used Ms. Schrader's house. However, many of the listed witnesses testified to the same exact information at Ms. Schrader's trial. To the extent a hearsay objection was raised, it would have been pointless. The sentencing court could have, of her own accord, taken note of the trial testimony.

Another general area of hearsay testimony given by Agent Cooper at sentencing concerned drug amounts. <u>Id.</u> at pp. 7-12. The witnesses at trial had not been as specific as Agent Cooper was in talking about amounts. Agent Cooper estimated approximately 1,000 grams of cocaine were distributed from

51

Ms. Schrader's house over the course of the conspiracy.  Id. at p. 12.
Ms. Schrader and her counsel may not have had notice prior to the sentencing
of this total.

Nevertheless, all of the government witnesses who testified at
Ms. Schrader's trial had entered into plea agreements.  Each of these witnesses
had signed factual basis statements in which they took responsibility for
between 300 and 500 grams of cocaine over the course of the conspiracy.  This
is the same range the sentencing court set for Ms. Schrader.

The factual basis statements in the cases of Ms. Schrader's
coconspirators were freely available to both counsel and Ms. Schrader prior to
trial and prior to sentencing.  Therefore, Ms. Schrader was on notice as to the
amounts likely to be attributed to her.  Had counsel objected to Agent Cooper's
hearsay testimony about amounts, the court could still have done as it did—
take judicial notice of amounts in similarly-situated coconspirators' cases.  The
sentencing court did not adopt Agent Cooper's 1,000-gram estimate.

Finally, at her sentencing hearing, Ms. Schrader admitted to the
sentencing court that she was responsible for 400 to 500 grams of cocaine in
the conspiracy.  Id. at p. 77.  Because of her admission, and because the
sentencing court ultimately did not adopt Agent Cooper's drug amount based
on hearsay (1,000 grams), Ms. Schrader cannot establish prejudice.

Another area of hearsay testimony testified to by Agent Cooper at
sentencing had to do with indicia that Ms. Schrader had control over activities
which occurred in her home.  Id. at pp. 12-14.  But this testimony, too, was
duplicative of what live witnesses had testified to at trial.  The sentencing court

could have simply taken judicial notice of the trial testimony to establish Ms. Schrader's control over her own house. Ms. Schrader cannot, accordingly, demonstrate prejudice for counsel's failure to object to this category of hearsay.

Another area of hearsay testimony given by Agent Cooper at sentencing had to do with drug sales to or by minors at Ms. Schrader's house. Id. at pp. 14-15. This information was also testified to at Ms. Schrader's trial. In fact, the government pointed out the trial testimony at length at Ms. Schrader's sentencing hearing. Id. at pp. 28-36 (prosecutor reading excerpts from the trial transcript into the record regarding minors). Again, Ms. Schrader cannot show prejudice.

Agent Cooper also testified to behavior on Ms. Schrader's part that might constitute obstruction of justice. Id. at pp. 15-16. Specifically, Agent Cooper testified that Ms. Schrader told her daughters, Kateri Patton and Whitney and Marie Zephier, not to talk to the police and not to testify. Id. at p. 15. There is no prejudice from not objecting to this testimony. The PSR did not suggest any enhancements should apply for obstruction. See CR. Docket No. 189 at p. 5, ¶ 16. The sentencing court did not make any findings that Ms. Schrader had obstructed or attempted to obstruct justice.

Agent Cooper testified to hearsay statements from these former tribal court clients of Ms. Schrader's who said they had paid Ms. Schrader for her representation in cocaine: John Joseph White Plume, Gabe White Plume, Charles Richard, and Jay Paul Galligo. See CR Docket No. 237 at p. 16. Agent Cooper also testified that Holly Wilson has stated Ms. Schrader told her she received cocaine for payment sometimes. Id. This information, too, was merely

duplicative of live nonhearsay testimony adduced at Ms. Schrader's trial.  She was not prejudiced by counsel's failure to object to the hearsay testimony at sentencing because the court could simply have relied on the trial testimony to establish this fact.

Ms. Schrader's assertion that counsel was deficient for failing to object to hearsay testimony at sentencing should be denied as a basis for granting habeas relief.  The hearsay statements given by Agent Cooper at sentencing were all statements by coconspirators given against their own penal interests.  For this reason alone, there was sufficient indicia of reliability to allow the sentencing court to receive and consider them.  Shackelford, 462 F.3d at 796; FED. R. EVID. 801(d)(2)(E) (statements of coconspirators not hearsay).

Moreover, almost all of the hearsay testimony Agent Cooper gave was simply repeating the same information that had been testified to at trial in a nonhearsay format.  Ms. Schrader has not shown that an objection by counsel would have been sustained and even if it were, how the results of her sentencing hearing would have been different.  The sentencing court could simply have relied on the trial transcript to establish the same facts.  This court respectfully recommends denying this basis for habeas relief in Ms. Schrader's § 2255 motion.

**9.    Counsel Failed to File a Civil Suit for Excessive Force**

Ms. Schrader's Sixth Amendment right to effective assistance of counsel covers only those actions counsel performed or should have performed in connection with Ms. Schrader's criminal charges in federal court.  Counsel was not appointed and had no authority under her court appointment for the filing

of any civil lawsuits on Ms. Schrader's behalf. The court recommends denying habeas relief on the basis that counsel for Ms. Schrader failed to file a civil lawsuit for damages on Ms. Schrader's behalf.

**G.      Whether Amendment 794 Applies to Ms. Schrader**

Ms. Schrader argues that Amendment 794 to the USSG should have been applied to her at sentencing. Amendment 794 went into effect on November 1, 2015. It amended the commentary to USSG § 3B1.2, dealing with decreases in a defendant's base offense level. Section 3B1.2 directs courts to subtract four points from the base offense level if the defendant was a "minimal" participant in the criminal activity, to subtract three points if the defendant's level of participation was between "minimal" and "minor," and to subtract two points if the defendant was a "minor" participant. <u>See</u> USSG § 3B1.2. The commentary to § 3B1.2 provides that the mitigating role adjustment is available to any defendant whose level of participation made him or her less culpable than the average participant in the criminal activity. <u>Id.</u> cmt. 3(A).

Amendment 794 did not change the text of § 3B1.2, but instead amended only the application notes to the section by introducing a non-exhaustive list of factors for the district court to consider when determining whether to apply § 3B1.2. <u>United States v. Gomez-Valle</u>, 828 F.3d 324, 327 (5th Cir. 2016). The amendment was intended to clarify § 3B1.2 as opposed to effecting a substantive change. <u>Id.</u>

Previously, application note 3(C) to § 3B1.2 read as follows:

The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

<u>See</u> USSG § 3B1.2, cmt. 3(C) (2014).

The current application note 3(C) to § 3B1.2 contains the same introductory sentence, with the following additional material:

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i)     The degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    The degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     The degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

<u>See</u> § 3B1.2, cmt. 3(C) (2015).

Ms. Schrader asserts Amendment 794 entitles her to a reduction in her USSG base offense level because she was a minor participant. <u>See</u> Civ. Docket No. 1-1 at p. 12. Generally, a sentencing court is required to use the version of

the USSGs which are in effect at the time of sentencing. <u>Dorsey v. United States</u>, 132 S. Ct. 2321 (2012); USSG § 1B1.11(a). Ms. Schrader was sentenced on April 10, 2015, and Amendment 794 did not go into effect until 7 months later, on November 1, 2015. Therefore, she may claim application of Amendment 794 only if the amendment was made retroactive to all cases. The Sentencing Commission did not make Amendment 794 retroactive to all cases. <u>See</u> USSG § 1B1.10(d) (2015). Because Amendment 794 is not retroactive to all cases, Ms. Schrader may not require its application to her case.

In any case, even if Amendment 794 were retroactive (which it is not), a § 2255 motion is not the proper vehicle to ask the district court to apply the amendment. Section 2255, as discussed above, is only available for relief where "the sentence was imposed in violation of the Constitution or laws of the United States," "the court was without jurisdiction to impose such sentence," or for errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." <u>See</u> 28 U.S.C. § 2255; <u>Hill</u>, 368 U.S. at 428; <u>Peguero</u>, 526 U.S. at 27-30. Here, failure to apply Amendment 794 did not render Ms. Schrader's sentence unconstitutional, in violation of a federal law, nor did it deprive the court of jurisdiction. Failure to apply the amendment also cannot be said to be a fundamental defect resulting in a complete miscarriage of justice.

Arguably, the amendment worked no change at all—prior to the amendment, courts were instructed to look at the totality of circumstances in determining the applicability of USSG § 3B1.2. After the amendment, the

instruction to sentencing courts is the same—look at the totality of circumstances—but the Sentencing Commission now sets forth a list of examples to consider. The list of examples is necessarily "non-exhaustive" because the test continues to be "totality" of the circumstances—that is, all relevant facts. No list of examples could possible include all the circumstances that might be relevant in all cases coming before federal district courts.

The proper vehicle for a motion to apply Amendment 794, then, is not a § 2255 motion. Rather, the proper vehicle would be a motion pursuant to 18 U.S.C. § 3582. Section 3582(c)(2) allows a court to reduce a defendant's term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission *if the reduction is consistent with applicable policy statements by the Commission.* See 18 U.S.C. § 3582(c)(2).

Section 1B1.10 defines what "policy statements by the Commission" are for purposes of a § 3582(c)(2) motion. See USSG § 1B1.10. The Sentencing Commission has stated:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual *listed in subsection (d) below*, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

See USSG § 1B1.10(a)(1). If the above was not clear enough, the Commission also stated:

> A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—none of the

amendments listed in subsection (d) is applicable to the defendant;
. . .

See USSG § 1B1.10(a)(2)(A).  Subpart (d) of § 1B1.10 does not contain a

reference to Amendment 794.  See USSG § 1B1.10(d) (2015 & 2016).

The above discussion makes clear that even though § 3582(c)(2) is the

only appropriate vehicle for Ms. Schrader's motion, even a motion pursuant to

§ 3582 would be unavailing to Ms. Schrader because Amendment 794 is not

retroactive, because it is not listed in subsection (d) of USSG § 1B1.10.

Therefore, even if this court were to construe Ms. Schrader's claim to be a

motion pursuant to 18 U.S.C. § 3582, the court would still recommend the

motion be dismissed.

Numerous courts which have been presented with § 2255 motions based

on Amendment 794 have reached the same conclusion as this court does.  See

United States v. Bazaldua, 2016 WL 5858634 at **1-2 (D. Minn. Oct. 5, 2016)

(claim that Amendment 794 should be applied does not state a claim under

§ 2255);  Kelly v. United States, 2016 WL 5660761 at ** 1-2 (S.D. Ga. Sept. 28,

2016) (claim that Amendment 794 should apply did not render Kelly's sentence

fundamentally unfair or a miscarriage of justice sufficient to provide relief

under § 2255 because Amendment 794 did not work a substantive change);

Altman v. United States, 2016 WL 5219599 at ** 1-3 (N.D. Iowa Sept. 21, 2016)

(Amendment 794 cannot be applied retroactively on collateral attack or on a

motion pursuant to 18 U.S.C. § 3582); United States v. Pineda, 2016 WL

4814804 at **1-2 (M.D. Fla. Sept. 14, 2016) (Amendment 794 does not apply

retroactively to cases on collateral review); United States v. Gillispie, 2016 WL

5402781 at ** 2-3 (E.D. Ky. Aug. 26, 2016) (same); and <u>United States v. Valencia</u>, 2016 WL 4491848 at **1-3 (E.D. Wa. Aug. 25, 2016) (claim that Amendment 794 should apply is not cognizable under § 2255).

The court respectfully recommends denying Ms. Schrader's claim that Amendment 794 should apply in her case.

**H.     No Evidentiary Hearing is Warranted**

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " <u>New v. United States</u>, 652 F.3d 949, 954 (8th Cir. 2011) (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " <u>Guzman-Ortiz v. United States</u>, 849 F.3d 708, 715 (8th Cir. 2017) (quoting <u>United States v. Sellner</u>, 773 F.3d 927, 929-30 (8th Cir. 2014)).  The Eighth Circuit held no evidentiary hearing was necessary in the <u>Guzman-Ortiz</u> case because the petitioner mischaracterized the record in his challenges to his lawyer's representation during closing argument and sentencing.  <u>Id.</u> Therefore, "no further factual development of the record was necessary" before denying those claims.  <u>Id.</u>

The district court's denial of an evidentiary hearing in <u>Adams v. United States</u>, 2017 WL 3642881 *3 (8th Cir. Aug. 25, 2017), was also affirmed. Adams claimed his lawyer just told him to answer all the district court's questions at the plea hearing "yes." Adams said he did not understand the plea documents or the plea proceeding, his lawyer never explained them to him, he only signed the documents because his lawyer told him to, said his lawyer blindly urged him to plead guilty and to answer all the judge's questions at the plea hearing by saying "yes." <u>Id.</u> at *2. Adams' lawyers submitted affidavits that backed up the record, but were not consistent with Adams' affidavit submitted in his § 2255 motion. <u>Id.</u> The district court denied the § 2255 motion without a hearing. <u>Id.</u> at *1.

The Eighth Circuit said Adams' contention that his lawyer said to answer all the judge's questions "yes" was belied by the transcript of the plea hearing where he answered multiple questions "no." <u>Id.</u> at *2. Since he chose between "yes" and "no" answers when answering the court's questions, the court was permitted to hold Adams to his sworn testimony at the plea hearing that he had read the plea documents, that they were accurate, that he had discussed them with counsel, and that he understood them. <u>Id.</u>

The court concludes here that Ms. Schrader has similarly not made a showing sufficient to entitle her to an evidentiary hearing. Her claims either fail as a matter or law, or are flatly contradicted by the record. Accordingly, this court recommends her motion to vacate, set aside, or correct her sentence be denied without holding an evidentiary hearing.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 17] be granted and that Ms. Schrader's § 2255 motion [Docket No. 1] be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(B). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED September 27, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge